# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

CAP-XX, LTD.,

       Plaintiff,

   v.

MAXWELL TECHNOLOGIES, INC.,

       Defendant.

C.A. No. 19-1733-CFC-JLH

**JURY TRIAL DEMANDED**



REDACTED VERSION

## MAXWELL'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO STRIKE CAP-XX'S EVIDENCE OF INFRINGEMENT UNDER 35 U.S.C. § 271(f) AND PRECLUDE ALL RELATED THEORIES

Susan E. Morrison (#4690)
Grayson P. Sundermeir (#6517)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
(302) 652-5070
morrison@fr.com
sundermeir@fr.com

***Attorneys for Defendant***
***MAXWELL TECHNOLOGIES, INC.***

## **TABLE OF CONTENTS**

I.   NATURE AND STAGE OF THE PROCEEDINGS............................................1

II.  SUMMARY OF THE ARGUMENT...................................................................2

III. STATEMENT OF THE FACTS .........................................................................3

   A. CAP-XX has known that Maxwell manufactured the accused
      supercapacitors outside of the United States. ...........................................3

   B. CAP-XX did not provide notice of a § 271(f) infringement theory. ...........6

   C. CAP-XX's experts alleged theories based on 35 U.S.C. § 271(f). ..............9

IV. LEGAL STANDARDS ....................................................................................10

V.  ARGUMENT.....................................................................................................12

   A. CAP-XX failed to comply with the Court's Order. ...................................12

   B. The *Pennypack* factors weigh in favor of excluding................................15

      1. Maxwell is prejudiced by CAP-XX's surprise theory. ...........................15

      2. The prejudice to Maxwell cannot be cured.............................................17

      3. Allowing CAP-XX's § 271(f) theory would delay trial. ........................18

      4. CAP-XX's failure to disclose is inexcusable..........................................18

      5. CAP-XX's conduct shows that it deems this theory unimportant. .........19

VI. CONCLUSION .................................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Aetna Inc. v. Mednax, Inc.*,
   No. CV 18-2217, 2021 WL 949454 (E.D. Pa. Mar. 12, 2021) ..........................15

*Agence France Presse v. Morel*,
   293 F.R.D. 682 (S.D.N.Y. 2013) ......................................................................15

*DCK TTEC, LLC v. Postel Indus., Inc.*,
   602 F. App'x 895 (3d Cir. 2015) ......................................................................11

*Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*,
   No. CV 15-819-LPS-CJB, 2017 WL 11558096 (D. Del. Dec. 11, 2017)....11, 12

*Mercedes Benz USA LLC v. Coast Automotive Grp. Ltd.*,
   2008 WL 4378294 (D.N.J. Sept. 23, 2008)
   (aff'd sub nom. *Mercedes-Benz USA, Inc. v. Coast Auto. Grp., Ltd.*, 362 F.
   App'x 332 (3d Cir. 2010)) .................................................................10, 16, 18

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
   559 F.2d 894 (3d Cir. 1977) ......................................................................11, 14

*Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*,
   60 F.3d 153 (3d Cir. 1995) ...............................................................................10

*NexStep, Inc. v. Comcast Cable Commc'ns, LLC*,
   No. CV 19-1031-RGA, 2021 WL 5356293 (D. Del. Nov. 17, 2021)....10, 11, 15

*TQ Delta, LLC v. ADTRAN, Inc.*,
   No. CV 14-954-RGA, 2019 WL 4346530 (D. Del. Sept. 12, 2019).................16

*Trilogy Commc'ns. Inc. v. Times Fiber Commc'ns Inc.*,
   109 F.3d 739 (Fed. Cir. 1997) ..........................................................................17

It is undisputed that CAP-XX failed to disclose its 35 U.S.C. § 271(f) infringement theory in its infringement contentions or at any time during fact discovery, instead disclosing it for the first time in its opening expert reports.  This is in direct violation of this Court's Scheduling Order, which required CAP-XX to specifically identify in its infringement contentions each "applicable statutory subsections of 35 U.S.C. § 271 asserted."  (D.I. 24 at 2.)  CAP-XX cannot offer any credible excuse for its failure in light of the factual record here.  CAP-XX's delay unfairly prejudices Maxwell, which was deprived of the opportunity to take discovery on CAP-XX's belated § 271(f) theory of infringement because of CAP-XX's failure to disclose it.  Maxwell therefore respectfully requests that the Court strike the portions of CAP-XX's expert reports that relate to its theory of infringement under § 271(f), and preclude CAP-XX from presenting a § 271(f) theory of infringement in this case.

## I.      NATURE AND STAGE OF THE PROCEEDINGS

CAP-XX, Ltd. filed this lawsuit in September 2019 alleging that Maxwell Technologies, Inc.'s supercapacitor products infringe U.S. Patent Nos. 6,920,034 and 7,382,600. (D.I. 1 at ¶¶ 6–7.) The Court issued its Claim Construction Order on November 12, 2021 (D.I. 82), and fact discovery closed on March 11, 2022 (D.I. 111). The parties served their opening expert reports on March 25, 2022, wherein CAP-XX first raised allegations of infringement under 35 U.S.C. § 271(f),

and first articulated damages theories on sales outside the United States based on its § 271(f) theories. Dispositive motions are due by July 15, 2022, and trial is set for October 24, 2022. (D.I. 24.)

## II.   SUMMARY OF THE ARGUMENT

The Court should preclude CAP-XX from alleging infringement under 35 U.S.C. § 271(f), and should strike the portions of CAP-XX's expert reports that allege infringement or attempt to calculate damages based on such a theory. Contrary to the express requirements of this Court's Scheduling Order (D.I. 24 at 2), CAP-XX did not include a theory of infringement based on 35 U.S.C. § 271(f) in its infringement contentions, nor did it disclose such a theory during discovery.  CAP-XX does not dispute this fact, and its explanations for its failure are both unavailing and belied by the factual record.

CAP-XX's failure to disclose this theory has prejudiced Maxwell's ability to conduct an investigation and formulate a defense to CAP-XX's new infringement allegations.  Establishing infringement under § 271(f) requires proof of factual elements that have no relevance to proof of infringement under § 271(a), such as showing that a subject component made in the United States is "all or a substantial portion" of the patented invention, or that the subject component is "especially made or especially adapted" for use in the patented invention.  Due to CAP-XX's decision to not disclose its infringement theory under § 271(f), Maxwell had no

opportunity to develop a defense to such allegations during fact discovery.

Because the case is at an advanced stage and CAP-XX cannot show good cause,

the Court should strike the offending portions of CAP-XX's experts' reports and

preclude CAP-XX from presenting a theory of infringement under § 271(f) at trial.

## III.   STATEMENT OF THE FACTS

Maxwell is a global manufacturer of supercapacitors—charge storage

devices that are capable of discharging rapidly.  In its expert reports, CAP-XX

alleges that Maxwell's supercapacitors infringe under § 271(f).  But CAP-XX did

not disclose this infringement theory prior to that point, even though it was aware

of the factual predicate for the theory well before it served its expert reports.

### A.   CAP-XX has known that Maxwell manufactured the accused supercapacitors outside of the United States.

Maxwell's public filings plainly state that it has "manufacturing locations in

the United States, Germany, China and South Korea." (Ex. 1 (Maxwell 2018 10-K)

at MAXWELL-CAPXX-016112.)  Those filings additionally make clear that the

production of the electrode material is in Peoria, Arizona and in a Korean facility,

while final assembly of the supercapacitor devices is completed in China.

> **Our internal manufacturing operations are conducted in production facilities located in Peoria, Arizona; and Yongin, South Korea.** We have made substantial capital investments to expand our internal production facilities and incorporate mechanization and automation techniques and processes. We have trained our manufacturing personnel in advanced operational techniques, added information technology infrastructure and implemented new business

processes and systems to increase our manufacturing capacity and improve efficiency, planning and product quality. **Our dry-processed ultracapacitor electrode material is currently produced exclusively at our Peoria facility and our wet-processed ultracapacitor electrode material is produced exclusively at our Korean facility. We outsource the assembly of our 60 mm diameter large cell ultracapacitors, and subsequently, assembly of large cell-based multi-cell modules as well as assembly of our mid-size D-cell ultracapacitor products and D-cell-based multi-cell modules to contract manufacturers based in China.** Considering our plans to expand our manufacturing facility for certain product lines as further described below, we believe that we have sufficient capacity to meet near-term demand for all of our product lines.

(*Id.* at MAXWELL-CAPXX-016119 (emphasis added); Ex. 2 (MAXWELL-CAPXX-015976); Ex. 3 (MAXWELL-CAPXX-016385.)  These public filings were available to CAP-XX before it filed its complaint.  And to the extent CAP-XX did not look at Maxwell's public filings during its pre-suit diligence, Maxwell produced them in late October 2021.

Maxwell's production also repeatedly put CAP-XX on notice of the existence of international operations. For example, Maxwell produced a variety of documents that conveyed the nature of its manufacturing business and foreign sales, including manufacturing specifications, internal team presentations, and organizational charts. (*See, e.g.*, Ex. 4, MAXWELL-CAPXX-027964 at 028022-028026 ("Operations Strategy" detailing electrode manufacturing in Peoria and cell and module manufacturing in China); Ex. 5, MAXWELL-CAPXX-027768 at 027790 (Annual Operating Plan disclosing the "Peoria Electrode Facility"); Ex. 6,

4

MAXWELL-CAPXX-040058 (Design failure mode and effect analysis for Korean

facility); Ex. 7, MAXWELL-CAPXX-039445 (Visual Method Sheet for electrode

manufacturing at Peoria facility).) These are just examples of the more than a

hundred documents that Maxwell produced describing as much. Thus, CAP-XX

should have known early on that Maxwell manufactured the accused devices

outside of the United States, and that Maxwell manufactures electrodes inside the

United States.

If CAP-XX had any doubt about the location of Maxwell's manufacturing

operations despite Maxwell's public filings and document production, that doubt

would have been quashed on February 15, 2022, when Maxwell supplemented its

response to CAP-XX's Interrogatory No. 10.  Maxwell clearly stated that while

some of the Accused Products were sold to U.S. customers, "none of the Accused

Products were made in the United States. Instead, each and every Accused Product

was made and manufactured by ████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

██████ (Ex. 8 at 15-17.)

Finally, Maxwell's corporate representatives confirmed the location of

manufacture of the accused products:

Q. Okay. So as best as you're aware, other than possibly the NessCap products, for all of the large and small cells, Maxwell would make the electrode in the U.S., ship it to wherever the contract manufacturer was who would then turn it into a finished cell?

A. Yes.

(Ex. 9 at 198:10-17 (March 1, 2022 Bouchard Depo.).)

## B.    CAP-XX did not provide notice of a § 271(f) infringement theory.

Despite it being publicly known that Maxwell's electrodes were manufactured in the United States while the remainder of Maxwell's manufacturing operations are largely outside the United States, CAP-XX never alleged infringement under 35 U.S.C. § 271(f).  Starting with its Original Complaint, CAP-XX only alleged infringement "in violation of 35 U.S.C. **§271(a)**." (D.I. 1 at ¶¶ 23, 31 (emphasis added).) The Amended Complaint included the same allegations. (D.I. 10 at ¶¶ 23, 31.)  CAP-XX never sought leave to amend its complaint to add infringement allegations under any subsection other than 35 U.S.C. § 271(a).

Similarly, CAP-XX's Infringement Contentions and Supplemental Infringement Contentions only asserted claims "pursuant to 35 U.S.C. § 271(a)." (Ex.10 at 3.)  Though it sought leave to amend these initial infringement contentions in April 2021, CAP-XX still asserted infringement only under 35 U.S.C. § 271(a).  (Ex. 11 at 3.)  CAP-XX never sought leave at any time to amend its contentions to include a theory of infringement under § 271(f).

6

CAP-XX also failed to provide notice that it intended to seek damages on products that were made and sold abroad based on an infringement theory under § 271(f), despite being given ample opportunity to do so.  CAP-XX's initial disclosures vaguely stated that it would rely on a "Computation of Damages Under Fed. R. Civ. P. 26 (a)(1)(A)(iii)."  (*See, e.g.*, Ex. 12 at 5 ("Plaintiff is entitled to damages adequate to compensate it for each of the Defendant's infringement of the Patents-in-Suit."), ("A determination of lost profits and/or a reasonable royalty cannot be made at this time and will be provided by Plaintiff's expert witness(es).").)

CAP-XX also neglected to provide notice of a § 271(f) theory in its interrogatory responses, despite being specifically asked for its damages theory. In fact, its initial and supplemental responses reinforced that CAP-XX would only target Maxwell's domestic sales—which is a § 271(a) theory, not § 271(f):

**Maxwell Interrogatory No. 11:**

Describe in detail the complete factual basis for any and all damages that You are claiming in this litigation, including the dollar amount of such damages, the methodology and calculation used to determine such amount, all supporting evidence and contentions, including, for example, all evidence You contend is relevant to a reasonable royalty under a Georgia-Pacific analysis, an identification of the parties to and date of any hypothetical negotiation, and all evidence relevant to any claim of lost profits.

**CAP-XX Response:**

CAP-XX objects to the above contention interrogatory as premature as discovery is ongoing and requiring the disclosure of expert opinions

7

before the deadline set forth in the Scheduling Order as amended. Subject to the foregoing objections, CAP-XX seeks to recover at minimum a reasonable royalty for any manufacture, use, sale or offer for sale of infringing products, including without limitation, the Accused Products; lost profits from any sales that CAP-XX lost to Defendant **in the U.S.** due to Defendant's sale of an infringing product; attorneys' fees; costs; and enhanced damages due to Maxwell's willful infringement. CAP-XX will supplement its response to this interrogatory in conjunction with the exchange of expert reports on damages in accord with the Scheduling Order as amended.

(Ex. 13 at p. 13.)

### **CAP-XX Supplemental Response (excerpted):**

Subject to the foregoing objections, CAP-XX intends to seek lost profits damages or, alternatively, a reasonable royalty. CAP-XX seeks to recover at minimum a reasonable royalty for any manufacture, use, sale or offer for sale of infringing products, including without limitation, the Accused Products; lost profits from any sales that CAP-XX lost to Defendant **in the U.S.** due to Defendant's sale of an infringing product; attorneys' fees; costs; and enhanced damages due to Maxwell's willful infringement. Regarding lost profits, the parties are, and at all relevant times have been, direct competitors in the EDLC market. CAP-XX has manufactured and sold significant volumes of EDLC's during the damages period **in the United States**. CAP-XX contends that the closest non-infringing substitute to the asserted patents would not be commercially acceptable. Cap-XX can therefore satisfy all *Panduit* factors.

(Ex. 14 at p. 16.)

Thus, even though CAP-XX knew, or should have known, that Maxwell produced the electrodes for the Accused Products in the United States and manufactured the Accused Products overseas, it did nothing during discovery to disclose an infringement theory under § 271(f) theory.

The Parties met and conferred on this issue, and CAP-XX did not dispute that its § 271(f) theory was not disclosed prior to its opening expert report.

### C.   CAP-XX's experts alleged theories based on 35 U.S.C. § 271(f).

Despite CAP-XX's failure to disclose its reliance on § 271(f), CAP-XX's infringement expert, Dr. Zuckerbrod, and damages expert, Mr. Pinsonneault, submitted reports that present theories under 35 U.S.C. § 271(f), which imposes liability for infringing foreign-manufactured products that incorporate certain components supplied from the United States.

In his infringement report, Mr. Zuckerbrod acknowledges that Maxwell's dry process electrodes are manufactured in the United States and shipped overseas for final assembly of the accused products. (Ex. 15 at ¶ 136.)  He then opines on various characteristics of the electrodes that are only relevant to an infringement analysis pursuant to § 271(f), such as their importance in the accused products and alleged lack of non-infringing uses.[1] (*Id.* at ¶¶ 136-137.)

Mr. Pinsonneault then relies on Dr. Zuckerbrod's opinions to support a damages theory based on § 271(f).  (Ex. 16 at ¶ 317 ("I understand that Dr.

---

[1] Although not the subject of this motion, these opinions are flawed because the electrodes are just one of many components of the accused devices, which also include a separator, terminals, a sealed package, and an electrolyte.  (Ex. 15 at ¶ 118.)  The electrodes are also used in non-infringing products for completely different applications. (Ex. 15 at ¶ 110-117.)

Zuckerbrod provides opinions about electrode components and their importance to supercapacitors, and his opinions may be determined to support a finding of infringement under Section 271(f).").)  Specifically, Mr. Pinsonneault presents three alternative royalty bases:

> Royalty Base Scenario 1: **All sales of all Accused Products.**
>
> Royalty Base Scenario 2: Sales to U.S. customers of Accused Products manufactured in Korea, **all sales of Accused Products manufactured in** the U.S. **and China**.
>
> Royalty Base Scenario 3: Sales to U.S. customers of Accused Products manufactured in Korea and China, all sales of Accused Products manufactured in the U.S.

(Ex. 16, ¶ 319 (emphasis added).)  The bolded text shows that Scenarios 1 and 2 encompass foreign sales of products not manufactured in the U.S., and therefore can only be supported by CAP-XX's belated alleged infringement under § 271(f). But because CAP-XX elected to not disclose its § 271(f) infringement theory prior to its expert reports, despite CAP-XX being aware of Maxwell's foreign manufacturing and sales, this theory should be precluded.

## IV.   LEGAL STANDARDS

"Strategic manipulation of the discovery process, especially with regard to such critical disclosures as the theory of damages is the ill toward which Rule 26 and Rule 37 are aimed." *Mercedes Benz USA LLC v. Coast Automotive Grp. Ltd.*, 2008 WL 4378294, at *5 (D.N.J. Sept. 23, 2008) (citation omitted) (aff'd sub nom. *Mercedes-Benz USA, Inc. v. Coast Auto. Grp., Ltd.*, 362 F. App'x 332 (3d Cir.

2010)). "Rule 26(a) does expressly require an initial computation and disclosure of the evidence that will be relied on to the full extent the patent plaintiff could or should know of it." *NexStep, Inc. v. Comcast Cable Commc'ns, LLC*, No. CV 19-1031-RGA, 2021 WL 5356293, at *1 (D. Del. Nov. 17, 2021) (quotation omitted).

Rule 26's disclosure requirement is enforced by Rule 37: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c). "Rule 37 is written in mandatory terms, and is designed to provide a strong inducement for disclosure of Rule 26(a) material." *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156 (3d Cir. 1995) (quotation omitted).

Courts in the Third Circuit weigh the "*Pennypack* factors" when considering whether to exclude evidence relating to untimely disclosures: "(1) the surprise or prejudice to the moving party; (2) the ability of the moving party to cure any such prejudice; (3) the extent to which allowing the testimony would disrupt the order and efficiency of trial; (4) bad faith or willfulness in failing to comply with the court's order; and (5) the importance of the testimony sought to be excluded." *Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*, No. CV 15-819-LPS-

CJB, 2017 WL 11558096, at *5 (D. Del. Dec. 11, 2017) (relying on *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977)).

"The decision to exclude testimony at trial is a 'decision peculiarly within the discretion of the trial judge.'" *NexStep*, 2021 WL 5356293, at *1 (quoting *DCK TTEC, LLC v. Postel Indus., Inc.*, 602 F. App'x 895, 898 (3d Cir. 2015) (internal citations omitted)). Accordingly, the Third Circuit reviews orders excluding witness testimony for abuse of discretion. *DCK TTEC*, 602 F. App'x at 898 n.5.

## V.   ARGUMENT

### A.   CAP-XX failed to comply with the Court's Order.

Both Rule 26 and the Court's scheduling order required CAP-XX to disclose its specific infringement theories during discovery.  (D.I. 24).  There is no dispute that it failed to do so, as CAP-XX did not disclose its § 271(f) theory until it served its opening expert reports.

Throughout discovery, CAP-XX limited its infringement allegations to infringement under § 271(a), which can only capture sales of products made, sold, offered for sale, used, or imported into the United States.  For example, CAP-XX's original and amended infringement contentions, which were required to disclose "the applicable statutory subsections of 35 U.S.C. § 271 asserted" (D.I. 24 at 2), only listed § 271(a).  CAP-XX's original and amended complaints were similarly limited to § 271 (a).  CAP-XX's late reliance on a § 271(f) theory is unsupported

by its § 271(a) disclosures made throughout the case.  Infringement under § 271(f) is fundamentally different than infringement under § 271(a), because § 271(f) prohibits certain activity that induces or contributes to infringement "outside of the United States," whereas § 271(a) prohibits infringing activity "within the United States." Infringement under § 271(f) thereby involves proving elements not required by § 271(a), such as whether supplied components constitute "all or a substantial portion of the components of a patented invention" or are "especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(f).  CAP-XX never disclosed a theory on how Maxwell allegedly satisfied these elements.

Maxwell even attempted to learn more about CAP-XX's theories through written discovery, but as shown above, CAP-XX's responses to Maxwell's Interrogatory No. 11 stymied that effort.  *See Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*, No. CV 15-819-LPS-CJB, 2017 WL 11558096, at *8 (D. Del. Dec. 11, 2017) ("Defendant was entitled to learn something about the facts that Plaintiffs' damages expert would be relying upon prior to being served with the Jarosz Report, so that those facts could then be vetted in discovery."). Other documents and discovery responses likewise failed to put Maxwell on notice of any theory under § 271(f).  (D.I. 1 at ¶¶ 23, 31 ("§271(a)"); D.I. 10 at ¶¶ 23, 31

("§271(a)"); Ex. 10 at p. 3 ("Defendant has directly infringed and continues to directly infringe the Asserted Claims pursuant to 35 U.S.C. § 271(a)."); Ex. 11 at p. 3 ("Defendant has directly infringed and continues to directly infringe the Asserted Claims pursuant to 35 U.S.C. § 271(a)."); Ex. 13 at p. 13 ("in the U.S."); Ex. 14 at p. 16 ("in the U.S."); *id*. ("in the United States").)

CAP-XX has no excuse for raising its § 271(f) theory for the first time in its expert reports.  The facts that require CAP-XX to resort to § 271(f)—namely, that Maxwell's electrodes are made in the United States but the final products are made abroad—were publicly available and should have been known to CAP-XX before it filed this case.  Maxwell's public filings are clear that Maxwell makes electrodes in Arizona but assembles the Accused Products overseas.  Maxwell also produced these public filings and other documents describing the same nearly five months before the close of fact discovery, and CAP-XX had ample time to seek leave to amend its contentions to add a § 271(f) theory—but it never did.  CAP-XX even stayed silent after Maxwell explicitly stated in a discovery response that the Accused Products were made overseas and that CAP-XX was not entitled to damages on those overseas sales.

The rules of this Court and the Federal Rules of Civil Procedure do not permit CAP-XX to spring such a surprise on Maxwell.  CAP-XX has ignored both

and now wants to reap the benefits of Maxwell being unprepared to defend itself against these new allegations. CAP-XX's actions cannot stand.

**B.    The *Pennypack* factors weigh in favor of excluding.**

1.    <u>Maxwell is prejudiced by CAP-XX's surprise theory.</u>

CAP-XX's belated disclosure prevented Maxwell from conducting discovery into infringement and damages issues under 35 U.S.C. § 271(f).  In particular, CAP-XX's theory of infringement under § 271(f) relies upon the domestic manufacture of electrodes used in the Accused Products.

A common defense of infringement under § 271(f) is that the accused component, the electrodes of the accused supercapacitors in this case, have a substantial non-infringing use.  Maxwell's electrodes are sold to third parties and incorporated into products of those third parties that are not accused of infringement.  (Ex. 17 at ¶¶ 110-117.)  Had CAP-XX disclosed its § 271(f) theory during discovery, Maxwell would have taken discovery from those third parties on the uses of the electrodes in their products, and could have developed a robust defense to CAP-XX's allegations.  But CAP-XX's failure to disclose this theory until expert reports prevented Maxwell from taking this third party discovery.

Maxwell would also have sought discovery from third parties (and CAP-XX) into a number of other items, including, but not limited to: (i) the alleged use of U.S. electrodes in foreign products, (ii) the proper scope of any related foreign

15

sales, if any (iii) depositions into the factual elements of § 271(f), and (iv) written discovery on CAP-XX on the facts it intends to rely on for this theory.  But Maxwell was unable to take any of this discovery due to CAP-XX's delay, as CAP-XX didn't disclose this infringement theory. *See NexStep*, 2021 WL 5356293, at *3 ("Allowing the new theory would have meant that Comcast could not have obtained targeted discovery around the factual basis of the theory.); *Agence France Presse v. Morel*, 293 F.R.D. 682, 686 (S.D.N.Y. 2013) ("Indeed, other courts have readily imposed sanctions where a party's failure to disclose its damages theory in a timely manner prevented its adversary from pursuing discovery targeted at that theory.") (collecting cases); *Aetna Inc. v. Mednax, Inc.*, No. CV 18-2217, 2021 WL 949454, at *5 (E.D. Pa. Mar. 12, 2021) ("Because Aetna failed to timely disclose its damages computation and stonewalled Mednax's efforts to discover information regarding payments to hospitals, Mednax was deprived of an opportunity to obtain relevant discovery that could potentially limit its liability for such payments.").

Prejudice to Maxwell will pervade the expert discovery process if CAP-XX is allowed to pursue its undisclosed § 271(f) infringement theory. Maxwell had barely a month to consider and address these new infringement and damages allegations, and had to do so on a deficient factual record. For example, Maxwell's non-infringement expert was forced to engage in last-minute fact-gathering from a

Maxwell engineer in order to supplement the information available to him on non-infringing alternatives and substantial non-infringing uses.  (Ex. 17 at ¶ 113.)  This litigation by surprise threatens to bestow an ill-gotten strategic advantage on CAP-XX, which is why "[o]pening expert reports are not the appropriate time to disclose new infringement allegations."  *TQ Delta, LLC v. ADTRAN, Inc.*, No. CV 14-954-RGA, 2019 WL 4346530, at *2 (D. Del. Sept. 12, 2019).

2.      The prejudice to Maxwell cannot be cured.

Fact discovery closed on March 11—several weeks before CAP-XX disclosed its §271(f) theory of infringement.  Thus, it is too late for Maxwell to pursue the above mentioned discovery.  In particular, it is far too late for Maxwell to be able to seek third party discovery from foreign entities about non-infringing uses of its electrodes, among other things.  Nor should Maxwell be required to incur time and expense when CAP-XX should have provided this disclosure well before the close of fact discovery.  *See Mercedes Benz*, 2008 WL 4378294, at *4 ("While this Court could allow additional discovery with regard to Coast's new theory of damages, the Court would then reward Coast's failure to disclose its calculation of damages and further delay resolution of a matter which began more than nine years ago.").

17

### 3. Allowing CAP-XX's § 271(f) theory would delay trial.

The case schedule would be disrupted and trial delayed if CAP-XX were allowed to proceed with its foreign manufacturing allegations.  Due process requires that Maxwell be allowed to take the discovery described above, which would require a substantial amount of time that the case schedule cannot spare. Trial would need to be delayed in order to remedy CAP-XX's transgression.  *See Trilogy Commc'ns. Inc. v. Times Fiber Commc'ns Inc.*, 109 F.3d 739, 745 (Fed. Cir. 1997) ("When scheduling orders are violated, an opposing party is often prejudiced by the ensuing delay and resultant expense.").

### 4. CAP-XX's failure to disclose is inexcusable.

CAP-XX has not provided a good faith basis for its failure to comply with Rule 26 or the Scheduling Order.  During the meet and confer, CAP-XX alleged that its late disclosures were a response to Maxwell's February 15, 2022 supplemental response to Interrogatory No. 10.  This argument is without merit. First, it ignores the fact that CAP-XX should have known from at least Maxwell's public 10-Ks and the document production in this case that Maxwell's products are manufactured abroad and that at least some of the electrodes within those products are made in the United States.  Second, CAP-XX was on notice long before Maxwell's supplemental response to Interrogatory No. 10 that ██████████ ████████████████████████████████████████ and that those sales would

18

therefore not be included in the damages base for infringement under § 271(a).

Finally, even if CAP-XX only learned these facts from Maxwell's supplemental

interrogatory response, there is no excuse for why it sat on its hands for the

subsequent four weeks, failing to seek leave to amend through the close of fact

discovery on March 11.  These actions are indicative of bad faith, but "[e]ven if

there is no evidence of bad faith, where an oversight is not rationally explained and

is surely prejudicial, exclusion is appropriate." *Mercedes Benz*, 2008 WL 4378294,

at *4.

> 5.  <u>CAP-XX's conduct shows that it deems this theory</u>
>     <u>unimportant.</u>

CAP-XX's failure to disclose this theory until now suggests that this is not

an important element of its case.  CAP-XX committed to a theory under §271(a)

from the outset, and never investigated any theories under §271(f).

What's more, exclusion of the § 271(f) theory would not bar all recovery

because CAP-XX could still proceed on Royalty Base Scenario 3, which is limited

to Maxwell's U.S. activity. This motion is therefore not case-dispositive because

CAP-XX would still be permitted to present the arguments that it plead in its

Complaints and disclosed during discovery. ████████████████████████

████████████████████████████████████████████

19

## VI.   CONCLUSION

For the foregoing reasons, Maxwell respectfully requests that the Court:

1.      Strike portions of Dr. Zuckerbrod expert report that allege

infringement based on 35 U.S.C. § 271(f): ¶¶ 33, 34, 136-137;

2.      Strike portions of Mr. Pinsonneault's expert report that allege

damages based on 35 U.S.C. § 271(f): ¶¶ 317-318, and opinions related to Royalty

Base Scenarios 1 and 2 in ¶¶ 319, 321-323; and

3.      Preclude CAP-XX from presenting any theory of infringement

pursuant to 35 U.S.C. § 271(f).

Dated: May 3, 2022

**FISH & RICHARDSON P.C.**

*/s/ Susan E. Morrison*
Susan E. Morrison (#4690)
Grayson P. Sundermeir (#6517)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
(302) 652-5070
morrison@fr.com
sundermeir@fr.com

Daniel R. Gopenko
1000 Maine Avenue, SW, Suite 1000
Washington, DC 20024
(202) 626-7745
gopenko@fr.com

Aamir A. Kazi
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
(404) 724-2811
kazi@fr.com

Matthew Colvin
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 292-4013
colvin@fr.com

Sarah E. Jack
3200 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
(612) 335-5070
jack@fr.com

***Attorneys for Defendant***
***MAXWELL TECHNOLOGIES, INC.***

# **WORD LIMIT CERTIFICATION**

I hereby certify that the above brief conforms to the Court's Standing Order Regarding Briefing in All Cases because it contains 4,525 words, which is less than the 20 pages (5,000 word equivalent) permitted by Local Rule 7.1.3(a)(4).

*/s/ Susan E. Morrison*
Susan E. Morrison