# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CAP-XX, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 19-1733-CFC-JLH |
| v. | ) | |
| | ) | **PUBLIC VERSION** |
| MAXWELL TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## CAP-XX, LTD.'S BRIEF IN OPPOSITION TO MAXWELL'S MOTION TO STRIKE EVIDENCE OF INFRINGEMENT UNDER 35 U.S.C. § 271(f) AND PRECLUDE ALL RELATED THEORIES AND IN SUPPORT OF ITS <u>MOTION TO STRIKE EXTRATERRITORIAL DAMAGES DEFENSE</u>

OF COUNSEL:

Adam Yowell
FISHER BROYLES LLP
5470 Kietzke Ln, #300
Reno, NV 89511
(775) 230-7364

Alastair J. Warr
FISHER BROYLES LLP
P.O. Box 30707
Indianapolis, IN 46230
(317) 407-5260

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Plaintiff*
*CAP-XX, Ltd.*

Dated:  May 17, 2022
Public version dated: May 24, 2022

# TABLE OF CONTENTS

I.    NATURE AND STAGE OF PROCEEDINGS.................................................1

II.    SUMMARY OF THE ARGUMENT ...........................................................1

III.    STATEMENT OF FACTS .........................................................................3

IV.    ARGUMENT ............................................................................................8

    A.    Legal Standards ...............................................................................8

    B.    Compliance with the Scheduling Order. ..............................................9

    C.    The *Pennypack* factors weigh against exclusion.................................12

        1.    Maxwell is not prejudiced or surprised....................................12

        2.    Any prejudice can be cured......................................................13

        3.    No disruption to the orderly and efficient trial of the case.......14

        4.    CAP-XX did not willfully fail to comply with the Scheduling Order and did not act in bad faith. ........................15

        5.    The evidence Maxwell seeks to exclude is important. .............16

V.    CONCLUSION.........................................................................................16

## TABLE OF AUTHORITIES

**Cases**

*Aetna, Inc. v. Mednax, Inc.,*
  2021 U.S. Dist. LEXIS 46557 (E.D. Pa. 2021) .................................................11

*Agence France Presse v. Morel,*
  293 F.R.D. 682 (S.D.N.Y. 2013) .......................................................................11

*DCK TTEC, LLC v. Postel Indus., Inc.,*
  602 F. App'x 895, 898 (3d Cir. 2015) ............................................................. 8-9

*Konstantopoulos v. Westvaco Corp.,*
  112 F.3d 710, 719 (3d Cir. 1997) ......................................................................12

*Mercedes Benz USA, LLC v. Coast Auto Group. Ltd.,*
  2008 U.S. Dist. LEXIS 72172 * 6 (D. N.J. 2008) ...............................................9

*Meyers v. Pennypack Woods Home Ownership Ass'n,*
  559 F.2d 894, 904-05 (3d Cir. 1977) ................................................................12

*Newman v. GHS Osteopathic, Inc.,*
  60 F.3d 153. 156 (3rd Cir. 1995) .........................................................................9

*NexStep, Inc. v. Comcast Cable Comms., LLC,*
  2021 U.S. Dist. LEXIS 221784 (D. Del. 2021) .................................................11

*TQ Delta, LLC v. Adtran, Inc.,*
  2021 U.S. Dist. LEXIS 158538 * 10 (D. Del. August 17, 2021) .........................8

*Trilogy Commc'ns. Inc. v. Times Fiber Commc'ns Inc.,*
  109 F.3d 739 (Fed. Cir. 1997) ...........................................................................14

*Wi-Lan Inc. v. Vizio, Inc.,*
  2018 U.S. Dist. LEXIS 20437, *1 (D. Del. Jan. 26, 2018) ..................................8

**Statutes**

35 U.S.C. § 271 .......................................................................................................1

35 U.S.C. § 271(a) ....................................................................................... 3, 10, 16

35 U.S.C. § 271(f) ............................................................................ *passim*

**Rules**

Fed. R. Civ. P. 26 .............................................................................8,11

Fed. R. Civ. P. 30(b)(6) .......................................................... 6, 7, 10, 13

Fed. R. Civ. P. 37(c)(1) ...........................................................................8

## I.     NATURE AND STAGE OF PROCEEDINGS

CAP-XX, Ltd. has not made a radical departure from its initial disclosures or infringement contentions.  Nor has it substantively changed the Asserted Claims or the Accused Products; with the exception of a few additional product model numbers for products that are the same as those previously disclosed.  CAP-XX has also maintained it is entitled to a reasonable royalty of about ▌% applied against a royalty base comprised of sales of the Accused Product under 35 U.S.C. § 271.

It is Maxwell that injected a new issue at the close of discovery, when it served second supplemental discovery responses and claimed for the first time that significant portions of its sales were outside the U.S.  Consequently, Maxwell's issue is of its own making and its motion should be denied.

Further to the nature and stage of proceedings in Maxwell Technology Inc.'s recitation, the parties will conclude expert discovery by June 10, 2022.  D.I. 114.

## II.    SUMMARY OF THE ARGUMENT

Maxwell has not presented good cause to strike CAP-XX's infringement theory under § 271(f).  CAP-XX has consistently maintained it can recover damages based on a reasonable royalty using the *Georgia Pacific* factors.  Maxwell is a Delaware corporation based in San Diego that offers to sell and sells Accused Products from California.  CAP-XX sought information from Maxwell regarding the sales of Accused Products.  In response to discovery requests seeking

information related to U.S. sales, Maxwell produced that information without claiming any sales should be excluded as non-U.S. sales.

CAP-XX also asked Maxwell to state every reason it believed the Accused Products did not infringe the Asserted Patents.  The interrogatories included any claim that the sales of Accused Products were not U.S. sales.  Until February 15, 2022, Maxwell never claimed that any portion of its sales of the Accused Products were extraterritorial and therefore, not infringing.  Until that time, CAP-XX had no reason to offer an infringement theory under § 271(f).

By March 10, 2022, CAP-XX completed depositions of Maxwell's witnesses and confirmed evidence supporting its § 271(f) claim.  The deadline for serving export reports was 15 days later on March 25, 2022. CAP-XX included its infringement theory under § 271(f) in its infringement and damages expert reports.

The relevant issue is not whether CAP-XX knew Maxwell made electrodes in Arizona and sold them overseas.  Rather, the issue is that Maxwell did not, until February 15, 2022, put CAP-XX on notice that it claimed certain Accused Product sales were not infringing because they were outside the U.S.  By March 25, 2022, CAP-XX put Maxwell on notice of its § 271(f) theory.  CAP-XX provided the most expeditious notice to Maxwell under the circumstances.  Maxwell's technical and damages experts have addressed this theory in their expert reports.

Given Maxwell's belated injection of extraterritorial sales into this litigation, CAP-XX's reliance on § 271(f) is justified and does not prejudice Maxwell. The Court should deny Maxwell's Motion to Strike and grant CAP-XX leave to adopt its expert reports as its final infringement contentions. Alternatively, CAP-XX requests that the Court preclude Maxwell from presenting any evidence that its sales of the Accused Products were outside the U.S. and not infringing.

## III.  STATEMENT OF FACTS

On December 28, 2020, CAP-XX served its Preliminary Infringement Contentions. (Maxwell Ex. 10)[1]  On April 1, 2021, CAP-XX served its First Supplemental Preliminary Infringement Contentions. (Maxwell Ex. 11)  CAP-XX asserted infringement under 35 U.S.C. § 271(a).  CAP-XX reserved the right to amend, modify, supplement, or narrow its infringement contentions. (*See e.g.*, Maxwell Ex. 10, p. 3-4 and Ex. 11, p. 4)

On June 14, 2021, Maxwell served its "Objections and Responses to Plaintiff's First Set of Interrogatories (Nos. 1-19)." (Ex. 18, CAP-XX Appendix, pp. 2-9)[2]  Maxwell's responses to Interrogatories Nos. 3 and 10 are relevant here. Interrogatory No. 3(e) asked:

---

[1] CAP-XX cites to Maxwell's Exhibits from D.I. 121. In the accompanying Appendix, CAP-XX submits additional exhibits and continues the numbering convention from Maxwell's Exhibits.

> For each of the Accused Products and any other product identified in response to Interrogatory Nos. 1 or 2, state precisely and in detail all facts which You contend support Your contention that it does not infringe the Asserted Claims, including without limitation: […] (e) ***Each and every ground, not previously identified herein, for the Defendant's contention that any such products do not infringe the Asserted Claims of the Patents-in-Suit.***

(Ex. 18, CAP-XX App., p. 3)  Maxwell's response did not include any indication

that it would assert the Accused Products did not infringe because of sales outside

the U.S. (Ex. 18, CAP-XX App., p. 3-5)

> Interrogatory No. 10 asked:

> For each year for the period from September 16, 2013 to December 6, 2019 for each of the Accused Products and any other products identified in response to Interrogatory Nos. 1 or 2 above, identify: (i) Your costs incurred in connection with the manufacture and sales of each of those products; (ii) Your profits derived from sales of each of those products, including the method employed and how such profits are calculated; (iii) ***the number of units sold by You in the U.S.; (iv) the revenue received by You in connection with any such sales; (v) the number of units made in the U.S.; and (vi) the number of units imported into the U.S.***

(Ex. 18. CAP-XX App., p. 6)  Maxwell said it would produce financial documents

relating to this Interrogatory (Ex. 18, p. 6) and disclosed several Excel files

containing sales information for the Accused Products.  Maxwell did not suggest

that any of those sales were extraterritorial sales in response to Interrogatory No. 3

---

[2] The page references are to the sequential numbering appearing and the bottom center of each page of the CAP-XX App.

or that any of the sales disclosed were not U.S. sales as requested in Interrogatory No. 10.

On November 24, 2021, Maxwell served its First Supplemental Responses and Objections. (Ex. 19, CAP-XX App., p. 11 *et seq.*)  Maxwell supplemented its answer to Interrogatory No. 3 but again did not claim any sales were extraterritorial. (Ex. 19, CAP-XX App., pp. 13-15)  Maxwell did not supplement its answer to Interrogatory No. 10. (Id.)

On February 11, 2022, the parties stipulated to extend the time to complete fact discovery until March 11, 2022, so they could complete depositions of key witnesses. D.I. 111. That stipulation prohibited either party from serving additional written discovery. D.I. 111.

On February 15, 2022, Maxwell served its Second Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories. (Ex. 20, CAP-XX App., p. 20 *et seq.*)[3]  Maxwell supplemented its responses to Interrogatories Nos. 3 & 10. In Maxwell's second supplemental response to Interrogatory No. 3, it did not state that any sales of the Accused Products were extraterritorial and therefore not infringing. (Ex. 20, CAP-XX App., pp. 25-29)

---

[3] CAP-XX Ex. 20 includes Maxwell's supplemental response to Interrogatory No. 3 that is absent from Maxwell's Ex. 8.

In its supplemental response to Interrogatory No. 10, Maxwell stated for the first time that the majority of sales of Accused Products did not infringe because they were not made or sold in the U.S. Maxwell excluded sales made to customers outside the U.S. (Ex. 20, Ex. 20, CAP-XX App., p. 31-33)  Maxwell also produced 296 sales contracts for the Accused Products, most of which state ███ ██████████████████. (Ex. 21, Ex. 20, CAP-XX App., p. 37 *et seq.*)[4]

After February 15, 2022, CAP-XX could not have issued written discovery. D.I. 114.  CAP-XX had a little more than one month to complete depositions (including Maxwell's witnesses designated under Fed. R. Civ. P. 30(b)(6)) and to serve opening expert reports by March 25.

On March 1, 2022, CAP-XX deposed Jeffrey Bouchard, one of Maxwell's Rule 30(b)(6) witnesses. (Ex. 22, CAP-XX App., p. 50, excerpts from Mr. Bouchard's deposition transcript)  Mr. Bouchard testified ██████████████ ████████████████████████████████████████████. (Ex. 22, CAP-XX App., p. 53, 197:21-25)  For all but a few supercapacitors, Maxwell ████████████████████████████████████████████████

---

[4] Depending on the damages period, Maxwell's new defense theory would reduce the applicable royalty base to about $████████ from about $████████ (Maxwell Ex. 16, Figure 32) or to about $████████ from about $████████ (Id. Fig. 33).

█████████████████████████████████████████ (Ex. 22, CAP-XX App., p. 54, 198:10-21)

On March 10, 2022, CAP-XX deposed Dr. Priya Bendale, another of Maxwell's Rule 30(b)(6) witnesses. (Exhibit 23, Ex. 20, CAP-XX App., p. 58, excerpts from Dr. Bendale's Deposition)  Dr. Bendale testified that ████████ ████████████████████████████████████████████████████ ███████. (Ex. 23, Ex. 20, CAP-XX App., p. 61-4, Bendale Dep. 175:16-21 and 176:13 to 178:10 and 187:15-25) ██████████████████████████ ████████████. (Ex. 23, Ex. 20, CAP-XX App., p. 64, Bendale Depo., 188:1-12)

On March 25, 2022, CAP-XX served the expert reports of Dr. David Zuckerbrod and Mr. Gregory Pinsonneault. (Maxwell Exs. 15 & 16)  Both reports relied at least in part on Mr. Bouchard's and Dr. Bendale's deposition testimony to address Maxwell's February 15, 2022 claims that a significant portion of its sales of Accused Products were not U.S. sales.

On April 25, 2022, Maxwell served the rebuttal expert reports of Mr. Hruska regarding infringement and of Ms. Distler regarding damages. (Respectively Maxwell Ex. 17 and CAP-XX Ex. 24, App. p. 67)  Mr. Hruska discussed the § 271(f) theory in rebuttal to Dr. Zuckerbrod's opinions. (Maxwell Ex. 17, ¶¶ 109-118)  Ms. Distler also discussed extraterritorial sales in her rebuttal to Mr. Pinsonnault's opinions. (Ex. 24, CAP-XX App., p. 69-70 & 71)

## IV.   ARGUMENT

### A.   Legal Standards

The governing Scheduling Order (D.I. 24, ¶ 7) states that non-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause to amend infringement contentions include "recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions."

"Infringement contentions must serve the purpose of providing notice to Defendants of Plaintiff's infringement theories beyond that which is provided by the mere language of the patent.  Yet Plaintiff need not in its contentions actually prove its infringement case." *Wi-Lan Inc. v. Vizio, Inc.*, 2018 U.S. Dist. LEXIS 20437, *1 (D. Del. Jan. 26, 2018). (Order denying defendant's motion to strike final infringement contentions); *see also TQ Delta, LLC v. Adtran, Inc.,* 2021 U.S. Dist. LEXIS 158538 * 10 (D. Del. 2021) (denying motion to strike revised infringement theories where any prejudice was curable)

 "If a party fails to provide information or identify a witness as required by Rule 26(a) ..., the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  The decision to exclude

testimony at trial is a "decision peculiarly within the discretion of the trial judge." *DCK TTEC, LLC v. Postel Indus., Inc.*, 602 F. App'x 895, 898 (3d Cir. 2015) (internal citations omitted).

Maxwell's motion implicates § 271(f), which imposes liability for patent infringement where the infringer (Maxwell) (1) supplies from the U.S. a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, to actively induce the combination of such components outside the U.S. in a manner that would infringe the patent if such combination occurred within the U.S., or (2) supplies from the U.S. any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial non-infringing use.

### B.   Compliance with the Scheduling Order.

The Third Circuit has made it clear that a court should not exclude testimony if it would result in "fundamental unfairness in the trial of the case." *Mercedes Benz USA, LLC v. Coast Auto Group. Ltd.,* 2008 U.S. Dist. LEXIS 72172 * 6 (D. N.J. 2008) (citing *Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153. 156 (3rd Cir. 1995)). "District courts must 'exercise particular restraint in considering motions to exclude evidence.'" *Id.* at * 7 (internal citations omitted). "The Third Circuit has, on several occasions, manifested a distinct aversion to the exclusion of important

9

testimony absent evidence of extreme neglect or bad faith on the part of the proponent of the testimony." *Id.* at * 7-8 (internal citations omitted). Here, there has been no extreme neglect or bad faith by CAP-XX.

CAP-XX had no reason to include an infringement theory under § 271(f) until Maxwell first claimed, on February 15, 2022, that more than ██% of the Accused Products were sold to customers outside the U.S.[5]  Until then, CAP-XX had relied on Maxwell's written discovery responses indicating that all of Maxwell's approximately $██ million in sales of Accused Products infringed under § 271(a).  Until February 15, Maxwell led CAP-XX to believe that all the Accused Products were offered for sale or sold in the U.S. Either basis is a separate act of infringement in the U.S.

Even then, CAP-XX had to obtain evidence from Maxwell's Rule 30(b)(6) witnesses for the evidentiary support for the § 271(f) theory. CAP-XX disclosed its § 271(f) theory on March 25, 2022, just 15 days after concluding depositions of Maxwell's witnesses who confirmed the factual bases supporting the theory.  CAP-XX completed its last deposition on March 10, 2022.  A mere two-weeks to assess the information and include it in an expert report was reasonable under the circumstances. Maxwell's claims regarding its inability to take further discovery

---

[5] CAP-XX disputes Maxwell's claim based on witness testimony and the contracts produced on February 15, 2022. The Court or jury will have to resolve that dispute later in the case.

would have existed even if CAP-XX submitted supplemental infringement contentions on March 14, the first Monday after completing depositions.

The instant facts differ from those in the cases cited by Maxwell.  For example, in *NexStep, Inc. v. Comcast Cable Comms., LLC,* 2021 U.S. Dist. LEXIS 221784 (D. Del. 2021), the plaintiff proposed a new hypothetical negotiation theory on the last business day before trial thereby preventing the defendant from obtaining targeted discovery relating to the factual basis for the new theory. *Id.* at *7-8. In *Agence France Presse v. Morel,* 293 F.R.D. 682 (S.D. N.Y. 2013), the plaintiff changed its damages theory less than a month before the trial was scheduled to start. *Id.* at 683. Similarly, in *Aetna, Inc. v. Mednax, Inc.,* 2021 U.S. Dist. LEXIS 46557 (E.D. Pa. 2021) the plaintiff offered a completely different theory of damages.

Here, CAP-XX has not changed its damages theory.  It merely added an infringement theory in response to Maxwell's February 22 claims regarding U.S. sales.  Maxwell's strategic manipulation of the discovery process is the type of conduct Rules 26 and 37 seek to prevent. *Aetna*, at * 12.  Maxwell's injection of a new issue forced CAP-XX to respond in kind. Considering Maxwell's late disclosure regarding extraterritorial sales, excluding CAP-XX's evidence supporting its § 271(f) infringement theory would result in fundamental unfairness in the trial of this case.  There has been no extreme neglect or bad faith by CAP-

XX thereby implicating the distinct aversion to the exclusion of this important evidence.

### C.    The *Pennypack* factors weigh against exclusion.

In the Third Circuit, courts consider the *Pennypack* factors to determine whether exclusion of evidence is appropriate: "(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order." *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977)). CAP-XX addresses each factor in turn.

### 1.    *Maxwell is not prejudiced or surprised.*

CAP-XX has not asserted infringement regarding different patent claims and has not asserted infringement against products patentably distinct from those first identified in its infringement contentions.  CAP-XX has not asserted a different royalty rate or a different royalty base.  Until February 15, 2022, based on Maxwell's discovery responses, CAP-XX proceeded on the assumption that all $███ million in sales of Accused Products constituted the royalty base.  That assumption was reasonable given that Maxwell had produced U.S. sales

12

information for the Accused Products and did not disclose that it would claim many of those sales were outside the U.S.  The § 271(f) claim merely retains the *status quo ante* in response to Maxwell's belated attempt to reduce the royalty base by more than ██%.  Should the Court grant Maxwell's Motion, the practical effect will be to exclude CAP-XX from proving damages to the full extent permitted by the Patent Act.

Within two weeks of completing depositions, CAP-XX served its expert report that included the § 271(f) theory.  Maxwell served its rebuttal damages report that addresses the issues associated with the instant Motion. (CAP-XX Ex. 23, Distler Report, ¶¶ 72-73 and 179).  Maxwell's technical expert also addressed the § 271(f) theory. (Maxwell Ex. 17, ¶¶ 109-118)  Maxwell's experts have had the opportunity to respond to CAP-XX's § 271(f) theory.  Maxwell caused the issue and has not been prejudiced.  This factor weighs against exclusion.

2.    *Any prejudice can be cured.*

Should the Court find prejudice exists, time exists to cure it.  Maxwell presumably has possession of the evidence relevant to its manufacturing and sales practices. (Maxwell Exs. 4-7)  The Court has the discretion to grant Maxwell leave to conduct additional discovery should it have a need.  Maxwell's Rule 30(b)(6) witnesses provided the information relied upon by Dr. Zuckerbrod and Mr. Pinsonnault in forming their respective opinions.  Maxwell's technical and

damages experts have served rebuttal reports that address the § 271(f) theory. Maxwell has until June 15 to depose CAP-XX's expert witnesses.  This factor weighs against exclusion.

>    3.    *No disruption to the orderly and efficient trial of the case.*

This case is not scheduled for trial until October 23, 2022, and time exists for limited additional discovery should Maxwell be able to articulate a reasonable need for the same.  Maxwell has the time to depose CAP-XX's expert witnesses. No disruption to the trial schedule seems imminent.

The posture of this case differs materially from the facts in *Trilogy Commc'ns. Inc. v. Times Fiber Commc'ns Inc.*, 109 F.3d 739 (Fed. Cir. 1997) cited by Maxwell.  In *Trilogy,* after submitting an opening report, the proponent submitted a second and a rebuttal report that contained new opinions and information that did not merely supplement the prior report. *Id.* at 744.  Here, CAP-XX submitted its opening expert reports by the due date.  Maxwell did not make the § 271(f) theory crucial to CAP-XX's proof of infringement until February 15, 2022.  Maxwell's experts have addressed the theory in their rebuttal reports.  Excluding this theory will unfairly prejudice CAP-XX, not Maxwell.  No disruption to the pretrial schedule is needed. This factor weighs against exclusion.

> 4. *CAP-XX did not willfully fail to comply with the Scheduling Order and did not act in bad faith.*

Maxwell points to publicly available information relating to its manufacturing processes and sales. D.I. 121, p. 18. Maxwell also hints that CAP-XX's delay of two weeks and failing to seek leave to supplement are indicative of bad faith. D.I. 120, p. 19. Neither argument has merit.

Maxwell did not inject the extraterritorial sales issue until February 15. By that time, CAP-XX was foreclosed from further written discovery. D.I. 111. The only course of action available to CAP-XX was to address Maxwell's new defense theory in depositions of its witnesses. Maxwell did not make those witnesses available until March 1 (Mr. Bouchard), March 10 (Dr. Bendale), and February 24 (Mr. Zupanovic).

CAP-XX was not able to marshal the facts necessary to respond to the new issue that Maxwell interjected until mid-March, about two weeks before the due date for expert reports. Even if CAP-XX had sought leave to serve supplemental infringement contentions, it seems doubtful that leave would have been granted before March 25, the due date for CAP-XX to serve its opening expert reports. As such, CAP-XX's actions provided more expeditious notice to Maxwell of the § 271(f) theory than seeking leave to amend. CAP-XX did not willfully fail to comply with the Scheduling Order, and it did not act in bad faith. This factor weighs against exclusion.

5. *The evidence Maxwell seeks to exclude is important.*

The § 271(f) theory did not become important until Maxwell first claimed extraterritorial sales on February 15, 2022.  Permitting Maxwell to inject a new issue after the close of written discovery without permitting CAP-XX to address that issue will prejudice CAP-XX by potentially reducing the royalty base by more than 80%.  As such, the evidence that Maxwell now seeks to exclude has high importance to CAP-XX.  This factor weighs against exclusion.

## V.   CONCLUSION

Maxwell supplemented its discovery responses at the very end of fact discovery and introduced a new issue into this litigation.  Until that supplementation, CAP-XX had no reason to rely on an infringement theory other than § 271(a).  Under the circumstances, CAP-XX submits that it would be prejudiced if not allowed to maintain an infringement theory under § 271(f).

CAP-XX respectfully requests that the Court deny Maxwell's Motion to Strike (D.I. 119) in its entirety, or, in the alternative, preclude Maxwell from presenting any evidence or theory that its sales of the Accused Products were extraterritorial.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Adam Yowell                          By:   */s/ Philip A. Rovner*
FISHER BROYLES LLP                          Philip A. Rovner (#3215)
5470 Kietzke Ln, #300                       Jonathan A. Choa (#5319)
Reno, NV 89511                              Hercules Plaza
(775) 230-7364                              P.O. Box 951
                                            Wilmington, DE 19899
Alastair J. Warr                            (302) 984-6000
FISHER BROYLES LLP                          provner@potteranderson.com
P.O. Box 30707                              jchoa@potteranderson.com
Indianapolis, IN 46230
(317) 407-5260                       *Attorneys for Plaintiff*
                                     *CAP-XX, Ltd.*

Dated:  May 17, 2022
10142906

17

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION</u>

The undersigned counsel certifies that this filing complies with the applicable type, font, and word limitations.  According to the word processing system used to prepare it, the forgoing document contains 3,624 words, excluding the case caption and signature block.  The text of this document, including footnotes, was prepared in Times New Roman, 14 point.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By: */s/ Philip A. Rovner*

Adam Yowell
FISHER BROYLES LLP
5470 Kietzke Ln, #300
Reno, NV 89511
(775) 230-7364

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

Alastair J. Warr
FISHER BROYLES LLP
P.O. Box 30707
Indianapolis, IN 46230
(317) 407-5260

*Attorneys for Plaintiff*
*CAP-XX, Ltd.*

Dated:  May 17, 2022
Public version dated: May 24, 2022