# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CAP-XX, LTD.,

       Plaintiff,

   v.

MAXWELL TECHNOLOGIES, INC.,

       Defendant.

C.A. No. 19-1733-CFC-JLH

**JURY TRIAL DEMANDED**

█████████████████

PUBLIC VERSION

## MAXWELL'S REPLY BRIEF IN SUPPORT OF ITS
## MOTION TO STRIKE CAP-XX'S EVIDENCE OF INFRINGEMENT
## UNDER 35 U.S.C. § 271(f) AND PRECLUDE ALL RELATED THEORIES

Susan E. Morrison (#4690)
Grayson P. Sundermeir (#6517)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
(302) 652-5070
morrison@fr.com
sundermeir@fr.com

***Attorneys for Defendant***
***MAXWELL TECHNOLOGIES, INC.***

## <u>TABLE OF CONTENTS</u>

I.  ARGUMENT ............................................................................................2

    A.  CAP-XX knew, or should have known, to allege infringement under
       § 271(f), and its failure to timely do so prejudices Maxwell. ......................2

    B.  Maxwell is not to blame for CAP-XX's failures ...........................................5

        1.  Maxwell produced information regarding foreign manufacture and
            sales early and often. ................................................................................5

        2.  Maxwell's response to interrogatory No. 3 is not relevant. ...................7

        3.  Maxwell's response to Interrogatory No. 10 is not misleading. ...........8

        4.  The timing of depositions does not save CAP-XX. ..............................9

    C.  Proving infringement and damages is CAP-XX's burden,
       not Maxwell's..................................................................................................9

    D.  CAP-XX's cross-motion should be denied. ................................................11

II.  CONCLUSION .....................................................................................11

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                   **Page(s)**

*Imhaeuser v. Buerk*,
    101 U.S. 647 (1880)....................................................................................9

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
    571 U.S. 191 (2014)....................................................................................9

*Promega Corp. v. Life Techs. Corp.*,
    875 F.3d 651 (Fed. Cir. 2017) ..................................................................9

CAP-XX does not dispute the basis for Maxwell's motion: (1) that CAP-XX did not disclose its § 271(f) theory until its opening expert reports; (2) that CAP-XX knew, or should have known, the factual basis for a § 271(f) theory well before that point; and (3) that Maxwell is prejudiced, including through the inability to pursue third party discovery that is relevant to rebut CAP-XX's new theory.  Maxwell raised each of these points in its Motion.  (D.I. 120 ("Motion") at V.A, III.A, V.B.1.)  CAP-XX, lacking any meaningful rebuttal to Maxwell's arguments, either conceded or ignored them.  (D.I. 125 ("Response").)

CAP-XX instead asks this Court to excuse its failures on the basis of alleged late disclosures by Maxwell.  But CAP-XX's arguments are irrelevant and incorrect.  CAP-XX's § 271(f) theory is premised on the fact that electrodes are made in the United States and sold to customers abroad.  The volume of sales to foreign customers is not something CAP-XX needed to know before asserting a § 271(f) theory.  But even if it were, CAP-XX has had access to all of the information it needed to know the volume of sales that Maxwell made outside the United States—including in Maxwell's 10-Ks and other documents referenced in Maxwell's motion.  CAP-XX ignores these documents in its responsive brief.

Even the timing of the depositions that CAP-XX relies upon in its opposition is of CAP-XX's own doing.  CAP-XX served its 30(b)(6) notice on January 31, 2022, for a corporate deposition on February 15.  Maxwell made its first corporate

designee available on February 24 (the other two were made available on March 1 and March 10). That CAP-XX waited so long to notice these depositions—particularly on issues like the availability of damages, on which CAP-XX bears the burden—cannot be held against Maxwell.

CAP-XX made no effort to investigate these important issues, and instead "assum[ed]" that it could sweep all of Maxwell's worldwide sales into its damages base. (Resp. at 12.) CAP-XX asks this Court to endorse that implausible assumption, excuse its discovery failures, and allow it to belatedly present a new infringement theory on which Maxwell had no opportunity to take discovery. CAP-XX alternatively asks the Court to preclude Maxwell from presenting evidence that many of its sales are extraterritorial, ratifying CAP-XX's improper assumption that is contrary to the evidence. Either way, CAP-XX's request that the Court endorse its belated allegations of infringement and damages theories should be rejected. Maxwell respectfully requests that the Court grant its motion to strike.

## I.    ARGUMENT

### A.    CAP-XX knew, or should have known, to allege infringement under § 271(f), and its failure to timely do so prejudices Maxwell.

CAP-XX's opposition fails to refute the key facts in support of Maxwell's motion. As CAP-XX notes, the subject of Maxwell's motion is CAP-XX's allegations under § 271(f), which are based on Maxwell's domestic manufacture of

2

an electrode that is found in accused devices sold abroad.  (Resp. at 9 (describing

Maxwell's motion).)  Maxwell presented overwhelming evidence that CAP-XX

should have known these facts early on, even before filing suit, as Maxwell

disclosed this information in prominent documents such as its public filings with

the SEC.  (*See*, *e.g.*, Motion at 3-4 (citing filings that disclose Maxwell's

"production facilities located in Peoria, Arizona; and Yongin, South Korea," but

that Maxwell's "dry-processed ultracapacitor electrode material is currently

produced exclusively at [the] Peoria facility . . . .").).)  In its opposition, CAP-XX

tries to deflect the analysis to other facts.  (Resp. at 2.)  But CAP-XX never

addresses Maxwell's exemplary evidence head on, and never denies that it knew or

should have known it could bring a claim under § 271(f) early in the case.

 CAP-XX similarly does not refute that Maxwell is unfairly prejudiced by

CAP-XX's new theory.  Maxwell identified specific examples of prejudice,

including relevant third-party discovery and that its expert was not able to make

use of a fully developed record on this issue.  (Motion at 15-17.)  On the issue of

prejudice, CAP-XX argues that the amount of its damages base has not changed.

(Resp. at 13.)  But CAP-XX's damages calculation is justified only if it can sweep

in worldwide sales, which it can do only with its new theory of infringement under

§ 271(f).  Maxwell is prejudiced by its inability to rebut that new theory with

evidence from third party customers, or have its experts offer opinions on a full record.  Having no response, CAP-XX ignores this issue altogether.

CAP-XX does not dispute that it should have known to plead § 271(f), but seeks a reprieve on the basis that its failure was not made with "extreme neglect or bad faith."  (Resp. at 10-11.)  But as CAP-XX tacitly acknowledges, "extreme neglect or bad faith" is not the standard for exclusion.  The "extreme neglect or bad faith" standard relied upon by CAP-XX is dicta in the case it cites in support. (*See* Resp. at 10 (citing *Mercedes Benz USA LLC v. Coast Auto. Grp. Ltd.*, 2008 WL 4378294, at *3 (D.N.J. Sept. 23, 2008)).)  The Court should instead follow Third Circuit law and consider exclusion of untimely evidence under the *Pennypack* factors, which weigh in favor of exclusion as outlined in Maxwell's Motion.  (*See* Motion at V.B.)

Even under CAP-XX's unsupported "extreme neglect and bad faith" standard, its conduct here is severe enough to warrant exclusion.  CAP-XX admits that it relied upon an "assumption" about Maxwell's worldwide sales, does not challenge that evidence that was either publicly available or produced in discovery negated that assumption, and concedes that it failed to properly evaluate that evidence.  Failing to properly investigate its damages theory demonstrates extreme neglect, and failing to disclose a new infringement theory immediately upon learning of it is evidence of bad faith.

4

**B.    Maxwell is not to blame for CAP-XX's failures**

Instead of addressing the basis for Maxwell's motion, CAP-XX casts blame

on Maxwell.  In some places, CAP-XX makes grand assertions about what

"Maxwell led CAP-XX to believe," without any citation or support (*see, e.g.*,

Resp. at 10).  In other places, CAP-XX provides a series of excuses that are

irrelevant or inaccurate, and in many cases both.  Maxwell addresses those

assertions below.

> 1.    <u>Maxwell produced information regarding foreign manufacture and sales early and often.</u>

CAP-XX first blames Maxwell for not "put[ting] CAP-XX on notice" of

Maxwell's foreign activities.  But as set forth in its opening brief, Maxwell

produced volumes of information (such as publicly available and produced 10-Ks)

that provide information relevant to the foreign manufacturing and sales activity of

Maxwell.  In the very same snippet quoted on pages 3-4 of Maxwell's brief, the

cited 10-K indicates that many of Maxwell's products are manufactured abroad.

(Motion at 4 ("[O]ur wet-processed ultracapacitor electrode material is produced

exclusively at our Korean facility. . .  We outsource the assembly of our 60 mm

diameter large cell ultracapacitors, . . . to contract manufacturers based in

China.").)  Later in that same document, the 10-K spells out that 80-90% of

Maxwell's sales are overseas:

| Revenue from external customers located in[(1)]: | | Years ended December 31, | | |
|---|---|---|---|---|
| | | 2018 | | 2017 |
| China | $ | 28,790 | $ | 36,251 |
| United States | | 15,733 | | 7,989 |
| Germany | | 12,201 | | 11,641 |
| Hungary | | 12,169 | | 13,451 |
| All other countries [(2)] | | 21,566 | | 18,377 |
| Total | $ | 90,459 | $ | 87,709 |

(Ex. 25 MAXWELL-CAPXX-016107 at 16178.)  This should not have been a surprise to CAP-XX because even Maxwell's website discloses that its products are available worldwide.  Other documents Maxwell produced have similar disclosures. (*See, e.g.*, Ex. 4, MAXWELL-CAPXX-027964 at 028022-028026 ("Operations Strategy" detailing electrode manufacturing in Peoria and cell and module manufacturing in China); Ex. 5, MAXWELL-CAPXX-027768 at 027790 (Annual Operating Plan disclosing the "Peoria Electrode Facility"); Ex. 6, MAXWELL-CAPXX-040058 (Design failure mode and effect analysis for Korean facility); Ex. 7, MAXWELL-CAPXX-039445 (Visual Method Sheet for electrode manufacturing at Peoria facility).)

CAP-XX does not dispute these disclosures, nor does it take the position that this information was inaccessible or obfuscated in some way.  Nor could it, as documents like 10-Ks should be considered in any reasonable investigation.  CAP-XX fails to address these documents in its reply brief, instead repeatedly arguing that Maxwell "injected" the issue of extraterritorial sales into the case at a late stage.  But that assertion ignores the facts of record here.  That most of Maxwell's

6

sales occurred outside the United States was always an issue in the case—CAP-XX simply failed to timely investigate or address it.

      2.    <u>Maxwell's response to interrogatory No. 3 is not relevant.</u>

After ignoring the documents that Maxwell cites, CAP-XX contends it was misled by Maxwell's response to Interrogatory No. 3, which CAP-XX faults for not disclosing worldwide sales.  Interrogatory No. 3, however, does not seek such information, and instead asks for Maxwell's non-infringement contentions. The full text, which the Response omits, demonstrates that this Interrogatory pertains to how elements of the Asserted Claims are not met by features of the Accused Products, not issues of damages or foreign manufacturing:

**INTERROGATORY NO. 3:**

For each of the Accused Products and any other product identified in response to Interrogatory Nos. 1 or 2 above, state precisely and in detail all facts which You contend support Your contention that it does not infringe the Asserted Claims, including without limitation:

(a) identifying each and every element of any of the Asserted Claims that is allegedly not present in each such product (i.e., missing elements);

(b) A statement of the Defendant's interpretation of each such missing element;

(c) A statement whether each such product provide(s) an equivalent to any such missing element and, if not, an explanation how the Defendant's products operate or function differently than the missing element;

7

(d) A particularized statement why a component, feature, or function of Defendant's products is not a substantial equivalent of a missing element; and

(e) Each and every ground, not previously identified herein, for the Defendant's contention that any such products do not infringe the Asserted Claims of the Patents-in-Suit.

(Ex. 18.)  It would be unreasonable for CAP-XX to expect a contention as to extraterritoriality in response to this Interrogatory because CAP-XX, by asserting only § 271(a), accused only domestic acts.  Interrogatory No. 3 does not call for the information that CAP-XX now attempts to fault Maxwell for not providing, and CAP-XX's arguments to the contrary are merely *post-hoc* rationalization.

> 3.   Maxwell's response to Interrogatory No. 10 is not misleading.

CAP-XX also references Interrogatory No. 10, which seeks Maxwell's sales information, and implies that Maxwell produced misleading information in response to that interrogatory or that Maxwell's disclosure was untimely.  But Maxwell's response was neither untimely nor misleading.  The first and only substantive response that Maxwell provided for this interrogatory (which CAP-XX does not cite) sets forth exactly which sales were domestic and which ones were not.  (Ex. 8 at 14-17.)  CAP-XX also references as misleading unidentified Excel files in conjunction with Interrogatory No. 10, but the only Excel file Maxwell served with its response to Interrogatory No. 10 identified the location of specific customers.  Thus, any suggestion that it was misleading or untimely is not

8

accurate.  And while CAP-XX complains that Maxwell's response to Interrogatory No. 10 was late, Maxwell served its response months before the end of discovery—just after CAP-XX identified the final scope of the asserted claims and accused products.

> 4.    The timing of depositions does not save CAP-XX.

Finally, CAP-XX emphasizes the late stage at which it obtained deposition testimony to excuse its failure to disclose its infringement theory.  Putting aside that CAP-XX does not dispute that all the information it needed was disclosed in publicly available documents, like Maxwell's 10-Ks, the timing of depositions was a problem of a CAP-XX's own making.  CAP-XX served its corporate depositions notice on January 31, 2022, and noticed Maxwell's corporate deposition for February 15.  Maxwell's first corporate representative, Hrvoje Zupanonvic, testified just a few days later, on February 24.  CAP-XX notably does not mention Mr. Zupanovic's deposition, though it included his testimony about the location of sales and manufacture.  While Maxwell's other corporate representatives testified at the beginning of March, the timing of these depositions is a result of CAP-XX's late corporate deposition notice.

**C.    Proving infringement and damages is CAP-XX's burden, not Maxwell's.**

After blaming Maxwell, CAP-XX concedes its damages theory targeting all worldwide sales was based on an "assumption."  That assumption was implausible

9

from the outset, given the volume of available and produced information indicating the extent of Maxwell's foreign activity.  CAP-XX could never have proven damages based on "assumptions."  While CAP-XX blames Maxwell for "mak[ing] the § 271(f) theory crucial," in reality, the § 271(f) theory was always crucial to CAP-XX's case because Maxwell's manufacturing was always largely overseas. Had CAP-XX done any investigation into the publicly available facts from Maxwell's 10-Ks or the documents that Maxwell produced, CAP-XX would have been well aware of this fact.

Indeed, it is CAP-XX—not Maxwell—that bears the burden of proving both infringement and damages.  *See, e.g.*, *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 198 (2014) (relying on *Imhaeuser v. Buerk*, 101 U.S. 647, 662 (1880) ("[T]he burden to prove infringement never shifts [to the alleged infringer] if the charge is denied in the plea or answer")); *Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 660 (Fed. Cir. 2017) ("[T]he burden of proving damages falls on the patentee, and the patentee must show his damages by evidence. Damages must not be left to conjecture by the jury. They must be proved, and not guessed at.") (brackets and quotations omitted).  But here, CAP-XX ignored those burdens, failing to investigate its infringement and damages positions during discovery, and choosing instead to rely upon its own assumptions.

10

CAP-XX has no excuse for disregarding the Scheduling Order's requirement to disclose all asserted subsections under § 271(f).  The Court should reject CAP-XX's request for an exemption from the Court's rules.

> ### D.   CAP-XX's cross-motion should be denied.

If the Court declines to allow CAP-XX's belated § 271(f) theory, CAP-XX asks in the alternative that Maxwell be precluded from presenting evidence that many of its sales had no connection to the U.S.  Maxwell will more fully address that motion in a forthcoming responsive brief to CAP-XX's cross motion.  However, CAP-XX does not deny that this evidence exists, and cannot deny that it was properly provided during fact discovery.  CAP-XX nonetheless asks the Court for extreme relief—that it prevent Maxwell from showing evidence to the jury that many of Maxwell's accused products are made and sold wholly outside the U.S., something that is indisputably true.  The Court should deny CAP-XX's cross-motion.

## II.   CONCLUSION

For the foregoing reasons, Maxwell respectfully requests that the Court:

1.      Strike portions of Dr. Zuckerbrod's expert report that allege infringement based on 35 U.S.C. § 271(f): ¶¶ 33, 34, 136-137;

2.      Strike portions of Mr. Pinsonneault's expert report that allege damages based on 35 U.S.C. § 271(f): ¶¶ 317-318, and opinions related to Royalty Base Scenarios 1 and 2 in ¶¶ 319, 321-323;

3.      Preclude CAP-XX from presenting any theory of infringement pursuant to 35 U.S.C. § 271(f); and

4.      Deny CAP-XX's Cross-Motion to Preclude Maxwell Technologies, Inc. From Asserting Any Of Its Sales Were Extraterritorial. (D.I. 124.)

Dated: May 24, 2022

**FISH & RICHARDSON P.C.**

*/s/ Susan E. Morrison*

Susan E. Morrison (#4690)
Grayson P. Sundermeir (#6517)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
(302) 652-5070
morrison@fr.com
sundermeir@fr.com

Daniel R. Gopenko
1000 Maine Avenue, SW, Suite 1000
Washington, DC 20024
(202) 626-7745
gopenko@fr.com

Aamir A. Kazi
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
(404) 724-2811
kazi@fr.com

Matthew Colvin
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 292-4013
colvin@fr.com

Sarah E. Jack
3200 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
(612) 335-5070
jack@fr.com

***Attorneys for Defendant***
***MAXWELL TECHNOLOGIES, INC.***

13

## <u>WORD LIMIT CERTIFICATION</u>

I hereby certify that the above brief conforms to the Court's Standing Order

Regarding Briefing in All Cases because it contains 2469 words, which is less than

the 10 pages (2,500 word equivalent) permitted by Local Rule 7.1.3(a)(4).

<u>/s/ Susan E. Morrison</u>
Susan E. Morrison

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 24, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 24, 2022 upon the following via electronic mail:

Philip A. Rovner
Jonathan A. Choa
POTTER ANDERSON & CORROON, LLP
1313 N. Market St.,
Hercules Plaza, 6th Fl.
P.O. Box 951
Wilmington, DE 19899-0951
provner@potteranderson.com
jchoa@potteranderson.com

Adam Yowell
FISHER BROYLES
530 Lytton Avenue, Second Floor
Palo Alto, CA 94301
adam.yowell@fisherbroyles.com

**ATTORNEYS FOR PLAINTIFF**
**CAP-XX, LTD.**

Adam Yowell
FISHER BROYLES
530 Lytton Avenue
Second Floor
Palo Alto, CA 94301
adam.yowell@fisherbroyles.com

Alastair J. Warr
Jason Mueller
FISHER BROYLES
203 North LaSalle Street, Suite 2100
Chicago, IL 650601
alastair.warr@fisherbroyles.com
jason.mueller@fisherbroyles.com

Chris Perque
FISHER BROYLES
2925 Richmond Ave., Suite 1200
Houston, TX 77098
chris.perque@fisherbroyles.com

*/s/ Susan E. Morrison*
Susan E. Morrison